UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, ET AL., Plaintiffs | §§§§ |
| v. | § Civil No. CC-09-76 |
| RADIOLOGY ASSOCIATES, LLP, ET AL., Defendants | §§§§§ |

## MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This declaratory judgment action arises out of a lawsuit styled *Marie Pecore and Daniel Pecore v. Radiology Associates, LLP and Brian K. Riley*, Cause No. 09-167-D, which is currently pending in the 105th Judicial District Court of Nueces County, Texas. In their state court suit, the Pecores claim they suffered damages when a Radiology Associates, LLP ultrasound technician performed an unauthorized vaginal examination on Mrs. Pecore. In this federal suit, Radiology Associates, LLP's insurance carriers seek to have this Court determine the rights and obligations under three separate insurance policies claimed by Radiology Associates, LLP to provide it insurance protection. Specifically, National Fire Insurance Company of Hartford, Continental Casualty Company, and American Physicians Insurance Company move for summary judgment that they have neither the duty to defend nor indemnify Radiology Associates, LLP in the *Pecore* lawsuit (D.E. 38, 49, 81). Radiology Associates, LLP moves for partial summary judgment that it is entitled to a defense under all three policies (D.E. 69, 77).

## I.   APPLICABLE LAW

The parties agree and the Court finds that Texas rules of contract interpretation control in this diversity case. *See Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996) (citing *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir. 1995)). To determine whether an insurer has a duty to defend its insured, Texas courts follow the "eight corners" or "complaint allegation" rule. *Canutillo*, 99 F.3d at 701; *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 208 (Tex. 2006). This rule "requires the trier of fact to examine only the allegations in the [underlying] complaint and the insurance policy in determining whether a duty to defend exists." *Canutillo*, 99 F.3d at 701 (citing *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993)). It is inappropriate to consider "facts ascertained before the suit, developed in the process of the litigation, or by the ultimate outcome of the suit." *Gulf Chem*, 1 F.3d at 369.

The duty to defend arises when the facts alleged in the complaint, if taken as true, "*potentially* state a cause of action within the terms of the policy." *Id.* (quoting *Continental Sav. Ass'n v. United States Fidelity & Guar. Co.*, 762 F.2d 1239, 1243 (5th Cir.) (emphasis in original), *opinion amended on other grounds*, 768 F.2d 89 (5th Cir. 1985). An insurer is obligated to defend an insured as long as the complaint alleges at least one cause of action within the policy's coverage. *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983). The duty to defend is determined by examining the latest amended pleading upon which the insurer

based its refusal to defend the action. *Rhodes*, 719 F.2d at 120. In applying the eight corners rule, Texas courts liberally construe allegations in favor of the insured. *GuideOne*, 197 S.W.3d at 308. Texas courts "resolve all doubts regarding the duty to defend in favor of the duty." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

Under Texas law, the interpretation of insurance contracts is governed by the same rules that apply to contracts in general. *American States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998) (citing *Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co.*, 99 F.3d 695, 700)). To determine the scope of coverage, courts "examine the policy as a whole to ascertain the true intent of the parties." *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004). In construing policy language, the court should read the policy as a whole and "must give effect to all contractual provisions so that none will be rendered meaningless." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *see also Tex. Farm Burearu Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123, 134 (Tex. 2004).

An insurer bears the burden of proving that exclusions in the policy in question bar coverage for the plaintiff's claims. *Bailey*, 133 F.3d at 369. Such exceptions and limitations in an insurance policy are strictly construed against the insurer. *Id.* This means the court "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a

more accurate reflection of the parties' intent.  *Id*.  These rules favoring the insured are applicable only when there is an ambiguity in the policy; if the exclusions in question are susceptible to only one reasonable interpretation, then these rules do not apply.  *Id*.

## II.   ANALYSIS

The parties agree the Court must examine the Pecores' Second Amended Petition in order to determine whether or not there is a duty to defend.  National Fire, Continental Casualty, and API contend the Pecores' claims against Radiology Associates, LLP are excluded from coverage under specific endorsements contained in each policy.  Radiology Associates, LLP contends the Pecores' broad allegations of negligence are within the scope of potential coverage under each policy and therefore trigger the duty to defend.  The Court will address each policy individually.

### A.  National Fire Insurance Company of Hartford

National Fire Insurance Company of Hartford ("National Fire") issued a commercial general liability policy to Radiology Associates, which covered liability for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  The policy also contained two exclusions for *Diagnostic Testing Laboratories* and *Services Furnished by Health Care Providers*.  National Fire contends the Pecores' claims against Radiology Associates are excluded from coverage under both exclusions.  The Court agrees.

**1. Diagnostic Testing Laboratories Exclusion**

The *Diagnostic Testing Laboratories Exclusion* provides that the insurance does not apply to bodily injuries *arising out of* "[M]edical or diagnostic testing, techniques or procedures used for the [D]etection, diagnosis or treatment of any sickness, disease condition or injury; or [E]valuation of a patient's response to treatment or medication …"

The words "arising out of," when used within an insurance policy, are "broad, general, and comprehensive terms effecting broad coverage." *Bailey*, 133 F.3d 363, 370 (citing *Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co.*, 189 F.2d 374, 378 (5th Cir. 1951)). The Texas Supreme Court has likewise held that "arise out of" means that there is simply a "causal connection or relation." *Utica Nat'l Ins. Co. of Texas v. American Indemnity Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (citing *Mid-Century Ins. Co. of Texas v. Lindsey*, 99 S.W.2d 153, 156 (Tex. 1999)). Texas law provides that "when an exclusion prevents coverage from injuries 'arising out of' particular conduct, '[a] claim need only bear an incidental relationship to the described conduct for the exclusion to apply.'" *Sport Supply Group., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458 (5th Cir. 2003) (quoting *Scottsdale Ins. Co. v. Tex. Sec. Concepts & Investigation*, 173 F.3d 941, 943 (5th Cir. 1999)). In addition, " '[a]rising out of' are words of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from[,]' 'having its origin in,' 'growing out of[,]' or 'flowing from,'

or in short, 'incident to or having connection with' …" *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 524-25 (5th Cir. 2006).

In their Second Amended Petition, the Pecores state that Marie Pecore "presented to Radiology Associates Portland Imaging Center for an abdominal and transvaginal ultrasound … as ordered by her physician." The Pecores claim that Mrs. Pecore sustained injuries during a trans-vaginal ultrasound, which requires the insertion of a wand into the patient's vagina. The wand is then "manipulated to obtain the appropriate images." The Pecores claim in their Second Amended Petition that the ultrasound technician, Brian Riley, performed an unauthorized vaginal exam on Mrs. Pecore that was tantamount to a sexual assault:

> During the exam, Riley inserted first one finger, then asked "can you take two," and then inserted a second finger. This is not part [of] a normal trans-vaginal ultrasound.
>
> This is a civil liability case in which it has become necessary for Plaintiff to bring a liability claim by reason of the personal injuries suffered by Marie Pecore as a result of a sexual assault which occurred immediately following examinations prescribed by her treating physician at one Defendant Radiology Associates' facilities. The assault resulted in great physical and mental injuries and considerable consequential damages.

The Pecores claim Radiology Associates was negligent in (1) failing to provide a chaperone, (2) failing to monitor Riley, and (3) failing to inform Mrs. Pecore that she had a right to have a chaperone present. The Pecores contend these omissions "were a direct and proximate cause of the incident made the basis of this suit and Plaintiff's resulting injuries and damages."

It is clear to this Court that Mrs. Pecore's alleged injuries flow from or, at the very least, are incidental to the trans-vaginal ultrasound, which this Court finds to constitute a "medical or diagnostic technique."[1] *See EMCASCO Ins. Co.*, 438 F.3d at 524-25. The Pecores contend the unauthorized vaginal exam occurred during that procedure or shortly thereafter. Had Mrs. Pecore not undergone the trans-vaginal ultrasound, the allegedly unauthorized vaginal exam would not have occurred. As a result, she would have no claims against Radiology Associates because such is the source of her claimed injuries and damages. For these reasons, the Court finds the factual allegations that underlie the Pecores' claim against Radiology Associates arise out of a diagnostic procedure and are therefore precluded from coverage under National Fire's policy.

**2. Services Furnished by Health Care Providers Exclusion**

The *Services Furnished by Health Care Providers* exclusion provides in relevant part that the insurance does not apply to bodily injuries arising out of "[T]he rendering or failure to render [M]edical, surgical, dental, x-ray or nursing service, treatment, advice or instruction … [A]ny health or therapeutic service, treatment, advice or instruction…"

The Court finds the Pecores' alleged injuries *arose out of* Radiology Associates' rendering or failure to render a "medical" and/or "health" service to

---

[1] Radiology Associates does not contend that a trans-vaginal ultrasound is not a "medical or diagnostic technique." Moreover, Texas courts have described ultrasound procedures as being medical in nature and used to diagnose various conditions. See *Mallat v. Reeves*, 238 S.W.3d 874 (Tex. App. – Dallas 2007, no pet.) (describing an endoscopic ultrasound as a medical procedure in a medical malpractice action)); *Brown v. Armstrong*, 713 S.W.2d 725, 730 (Tex. App. – Houston [14th Dist.] 1986, writ refused, n.r.e.) (discussing use of ultrasound to diagnose patient's tubal pregnancy).

Mrs. Pecore. The Pecores' claims against Radiology Associates are "health care liability claims" as defined by Chapter 74 of the Texas Civil Practice and Remedies Code. See TEX. CIV. PRAC. & REM. CODE §74.001, *et seq*. "Health care liability claim" means the following:

> [a] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care,[2] or health care,[3] or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract. *Id*. at §74.001(13).

Whether a cause of action falls within the definition of "health care liability claim" turns on the underlying nature of the claim plead. *North American Specialty Ins. Co. v. Royal Surplus Lines Co.*, 541 F.3d 522, 561 (5th Cir. 2008) (citing *Garland Community Hosp. v. Rose*, 156 S.W.3d 541, 543-44 (Tex. 2004)). If the act or omission alleged in the complaint is an inseparable part of the rendition of health care services, then the claim is a health care liability claim. *Id*. A professional services policy exclusion applies to preclude coverage when the plaintiff's injuries are caused by the breach of a professional standard of care. *Utica*, 141 S.W.3d at 202.

---

[2] "Medical care" means any act defined as practicing medicine Section 151.002, Occupations Code, performed or furnished, or which would have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient's care, treatment, or confinement. *Id*. at §74.001(19). "Practicing medicine" means the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physically deformity or injury by any system or method …" TEX. OCC. CODE §151.002 (a)(13).

[3] "Health care" means any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement. TEX. CIV. PRAC. & REM. CODE §74.001(10).

8

In their Second Amended Petition, the Pecores provide the requisite statutory notice[4] for bringing a health care liability claim and specifically plead that Radiology Associates violated a standard of care. Specifically, they make the following allegations against Radiology Associates:

> Plaintiffs believe an alleged that Defendants committed serious acts and/or omissions in the care and monitoring of Marie Pecore, which constituted negligence, and that such negligent acts and/or omissions by the Defendants were a direct and proximate cause of the injuries and damages sustained by Plaintiffs herein. The acts of negligence included the failure on the part of Radiology Associates to provide a chaperone during the procedure and the failure to properly monitor their employee, Mr. Riley.
>
> Also, Radiology Associates was negligent and violated the standard of care because it did not have any kind of notice or sign or other form of written communications, which would have informed Mrs. Pecore of her right to have a chaperone. Radiology Associates' failure in this regard proximately resulted in the injury to Plaintiffs.

Here, the trans-vaginal ultrasound and subsequent allegedly unauthorized vaginal exam is an inseparable part of the rendition of health care services. Moreover, Radiology Associates does not dispute that it is a health care provider or that some of the Pecores' claims against it are in fact health care liability claims. Radiology Associates contends the "broad, unqualified, and general allegations of negligence" could include potential liability for "negligent staffing, building design, polices and procedures applicable to any normal business, general duties of supervision that any business might owe a customer, and a myriad of

---

[4] Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim … to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim. *Id*. at §74.051(a).

other potential scenarios." This Court must focus on the factual allegations that show the origin of damages rather than on the theories alleged. *Bailey*, 133 F.3d at 369. *See also North American Specialty Ins. Co.*, 541 F.3d at 561 ("[P]laintiffs cannot use artful pleading to avoid the MLIIA's requirements when the essence of the suit is a health care liability claim …"). The Pecores do not plead facts to support these alternative claims. What they *do* plead is that Radiology Associates' negligent monitoring of Mrs. Pecore and negligent supervision of Riley made it possible for Riley to perform the allegedly unauthorized vaginal exam, the source of Mrs. Pecore's claimed injuries. Such claims have been held to implicate a professional standard of medical care. *See Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 854 (Tex. 2005).

For these reasons, the Court finds the factual allegations that underlie the Pecores' claims against Radiology Associate implicate a professional standard of care and arise out of the alleged failure to properly render a "medical" and/or "health" service within the meaning of the exclusion. Had Radiology Associates not been negligent as alleged, Riley would not have performed the vaginal exam, and the Pecores would not have sustained any injuries. Therefore, the Pecores' claims against Radiology Associates are precluded from coverage.

For the foregoing reasons, based solely on the Pecores' Second Amended Petition, National Fire's motion for summary judgment that it has neither the duty to defend nor the duty to indemnify Radiology Associates in the *Pecore* lawsuit is GRANTED (D.E. 38). *See Bailey*, 133 F.3d at 368 (noting that "[l]ogic and

common sense dictate that if there is no duty to defend, then there must be no duty to indemnify") (citing *Western Heritage Ins. Co. v. River Entertainment*, 998 F.2d 311, 315 (5th Cir. 1993)). Radiology Associates, LLP's motion for partial summary judgment that it is entitled to a defense under the National Fire policy is DENIED (D.E. 69, 77).

### B. Continental Casualty Company

Continental Casualty Company ("Continental") issued a commercial umbrella policy to Radiology Associates, which covered liability for "those sums in excess of 'scheduled underlying insurance' that the insured becomes legally obligated to pay as 'ultimate net loss' because of 'bodily injury' to which this insurance applies." The policy contained a *Medical Malpractice/Professional Liability Exclusion*, which provides the following:

> It is agreed that this insurance does not apply to any liability *arising out of* the rendering of or failure to render the following professional services:
>
> > Medical, surgical, dental or nursing treatment …
> >
> > Furnishing, prescribing, applying, injecting or dispensing of drugs or medical, dental or surgical supplies or appliances …

Continental contends the Pecores' claims against Radiology Associates are excluded from coverage under this exclusion. Specifically, Continental argues that performing a trans-vaginal ultrasound involves "medical treatment" and the application of a medical appliance.

11

The Court agrees that performing a trans-vaginal ultrasound involves the application of a medical appliance within the meaning of the *Medical Malpractice/Professional Liability Exclusion*.[5] In their Second Amended Petition, the Pecores explain that "[T]he exam ordered by Mrs. Pecore's doctor requires the insertion of a 'wand' into the patient's vagina. The wand is then manipulated to obtain the appropriate images." Attached to Continental's supplemental brief is the declaration[6] of John R. Pettigrove, M.D., who states "It is my belief that an ultrasound probe is a medical appliance. Insertion of the probe into the vagina constitutes an application of the probe." Radiology Associates does not object to this evidence and does not argue that administering a trans-vaginal ultrasound does not involve the application of a medical appliance.

This Court has already concluded that the Pecores' alleged injuries and claims against Radiology Associates arose out of the trans-vaginal ultrasound. Had there been no trans-vaginal ultrasound, the allegedly unauthorized vaginal exam would not have occurred. Had the vaginal exam not occurred, there would be no injury and therefore no viable claim against Radiology Associates. Because the Court finds the Mrs. Pecore's injuries arose out of a professional service specifically listed in the *Malpractice/Professional Liability Exclusion*, i.e. the application of a medical appliance, the Pecores' claims against Radiology Associates are excluded from coverage under Continental's policy. Continental's

---

[5] In view of the Court's conclusion, it is unnecessary to determine whether performing a trans-vaginal ultrasound constitutes "medical treatment."

[6] Dr. Pettigrove makes his declaration pursuant to 29 U.S.C. §1746.

motion for summary judgment that it has neither the duty to defend nor the duty indemnify Radiology Associates in the *Pecore* lawsuit is GRANTED (D.E. 38). Radiology Associates, LLP's motion for partial summary judgment that it is entitled to a defense under the Continental policy is DENIED (D.E. 69, 77).

### C. American Physicians Insurance Company

American Physicians Insurance Company ("API") issued a professional liability policy to Radiology Associates, which provides "[S]ubject to the terms, conditions, and exclusions of this policy, we will pay on your behalf damages you are legally obligated to pay resulting from … [T]he professional services which you personally provided or should have provided to your patients …" API contends the following policy exclusions preclude a duty to defend and indemnify Radiology Associates in the *Pecore* lawsuit:

> 1. <u>Exclusion for sexual misconduct.</u>  We will not cover any claims made against you, whether the injury or damage itself was intended or not, which arises out of any sexual act.
>
> 2. <u>Exclusion for violation of law.</u>  We will not cover any claims made against you, whether the injury or damage was intended or not, which arises out of an act or omission in violation of the penal code or criminal statutes in the jurisdiction in which the act occurred.
>
> 3. <u>Exclusion punitive or exemplary damages.</u>  We will not cover any claims made against you for any punitive or exemplary damages.
>
> 4. <u>Exclusion for intentional acts.</u>  We will not cover any claims made against you for any injury or damage, whether the injury or damage itself was intended or not, which whole or in part, arises out of an intentional tort.

The Court disagrees with API. As explained above, the duty to defend arises when the facts alleged in the complaint, if taken as true, "*potentially* state a cause of action within the terms of the policy." *Gulf Chem*, 1 F.3d at 369. Texas courts liberally construe allegations in favor of the insured and "resolve all doubts regarding the duty to defend in favor of the duty." *GuideOne*, 197 S.W.3d at 308; *King*, 85 S.W.3d at 187.

Here, the basic factual allegation underlying the Pecores' alleged injuries and claims against Radiology Associates is that Brian Riley performed an unauthorized vaginal exam on Mrs. Pecore. While the Pecores characterize the vaginal exam as being sexual in nature and tantamount to a sexual assault, their factual description of what actually occurred during the vaginal exam does not necessarily frame it as being a sexual *act*.

> During the exam, Riley inserted first one finger, then asked "can you take two," and then inserted a second finger. This is not part [of] a normal trans-vaginal ultrasound.
>
> Afterwards, Ms. Pecore reported the incident to her physician who informed her there was, in fact, no vaginal examination ordered, nor was it appropriate for a technician to perform such an examination.

The Pecores claim "[T]he serious bodily injuries made the basis of this lawsuit were proximately caused by *negligence* of the named Defendants ...." and Defendants' *failure to meet the standard of care*. The Court finds the facts alleged by the Pecores *potentially* state a claim that Brian Riley was negligent in (1) performing the exam, (2) the way he performed the vaginal exam, and/or (3) performing a vaginal exam that had not been ordered by Mrs. Pecore's physician.

While the Court has found that the Pecores' injuries stem from the allegedly unauthorized vaginal exam, it is not entirely clear whether the vaginal exam as described in the Pecores' Second Amended Petition necessarily constitutes a "sexual act," "intentional tort," or violation of the Texas penal code within the meaning of the cited policy exclusions.  When it is unclear whether the facts alleged bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under their complaint within the coverage of the policy.  *Zurich*, 268 S.W.3d at 491.  Liberally construing the facts alleged in favor of the insured, the Court finds the facts alleged by the Pecores in their Second Amended Petition potentially state a cause of action against Radiology Associates that falls within API's policy coverage thereby triggering the duty defend.  Furthermore, because the Pecores specifically allege and state a claim for *actual* damages against Radiology Associates, the exemplary damages exclusion does not preclude coverage in this case.

Whether or not API has the duty to indemnify Radiology Associates is not justiciable by the Court at this time. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 536-37 (5th Cir. 2004) (Having properly determined that insurer had the duty to defend, federal district court was required, under Texas law, to refuse to decide the duty to indemnify issue, because the underlying litigation was not completed). Texas state law generally prohibits the determination of the duty to indemnify before the conclusion of the claimant's

15

underlying litigation against the insured. *Northfield Ins. Co.*, 363 F.3d at 537 (citing *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, LLP*, 267 F.Supp.2d 601, 633 (E.D. Tex., 2003). *See also Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009) ("[F]acts actually established in the underlying suit control the duty to indemnify").

API's motion for summary judgment that it has no duty to defend or indemnify Radiology Associates in the *Pecore* lawsuit is DENIED (D.E. 49, 81). Radiology Associates, LLP's motion for partial summary judgment that it is entitled to a defense under the API policy is GRANTED (D.E. 69, 77).

ORDERED March 3, 2010.

_____
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE